EMERALD RIDGE PROPERTY OWNERS
ASSOCIATION *v.* CHERYL NOEL THORNTON ET AL.
(AC 18156)

Landau, Spear and Cretella, Js.

Argued February 19—officially released June 29, 1999

*James M. Miele,* with whom, on the brief, was *Matthew S. Hall,* for the appellant (plaintiff).

*William J. Tracy, Jr.,* for the appellee (named defendant).

*William J. Sweeney, Jr.,* for the appellee (defendant Michael Chambrello).

*Edward M. Rosenblatt,* for the appellee (defendant Michelle Florian).

*Opinion*

CRETELLA, J. The plaintiff appeals from the judgment rendered in favor of the defendants following the granting by the trial court, *Holzberg, J.,* of the defendants' motions for summary judgment. Indirectly, the appeal relates to the prior denial by the court, *Stengel, J.,* of the plaintiff's motion for summary judgment. The following facts are relevant to this appeal. The plaintiff filed a motion for summary judgment, which was opposed by the defendants, submitting therewith affidavits and certain supporting documents that are the crux of this dispute. After the court denied that motion, the defendants filed motions for summary judgment with an affidavit that incorporated by reference the same documents, together with a copy of the memorandum of decision denying the plaintiff's motion for summary judgment. Both parties agreed that there are no facts in dispute and that the sole issue is whether the supporting documents that were duly recorded in the Southington land records satisfied the statutory requirements of the Common Interest Ownership Act, General Statutes § 47-200 et seq.

During the hearing before Judge Stengel on the plaintiff's motion for summary judgment, the following colloquy took place:

"[Plaintiff's Attorney]: Your Honor, I don't think there are any facts in dispute. I think the only question . . . is one of law. I think appropriately the defendants could have filed a cross motion, for a summary judgment. . . . [T]he facts are, the subdivision map was recorded, I don't think that's in dispute. The question is, what is the legal effect of recording . . . does [the Common Interest Ownership Act] apply or does it not—I think that's perfectly appropriate for summary judgment. . . .

"The Court: Are you—are you also conceding that if summary judgment is denied, that ends your cause of action?

"[Plaintiff's Attorney]: Yes, Your Honor."

"Our standard of review of a trial court's decision to grant a motion for summary judgment is well established. *Zichichi* v. *Middlesex Memorial Hospital*, 204 Conn. 399, 402, 528 A.2d 805 (1987). Practice Book § 17-49, formerly § 384, requires that [t]he judgment sought shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Hryniewicz* v. *Wilson*, 51 Conn. App. 440, 443, 722 A.2d 288 (1999).

Although Judge Holzberg neither filed a memorandum of decision nor signed a transcript of an oral recitation as to the basis for granting the motions for summary judgment, we may exercise our discretion to review the plaintiff's claim if the unsigned transcript is sufficient to establish the basis of the trial court's factual conclusions. See *State* v. *Sandra O.*, 51 Conn. App. 463, 465, 724 A.2d 1127 (1999). That transcript reveals the following statement by one of the defense attorneys: "Well, the posture of the case is that the plaintiff filed a motion for summary judgment in its favor and Judge Stengel

issued a written decision [and] . . . in the course of [argument on the plaintiff's motion] it was agreed that that decision was going to be dispositive of the plaintiff's case. Judge Stengel ruled against the plaintiff, so the defendants have just, for a procedural matter, filed motions which ought to be granted."

The defendants, in moving for summary judgment, put before Judge Holzberg the memorandum of decision of Judge Stengel denying the plaintiff's motion for summary judgment, together with an affidavit. The affidavit recited what the transcript discloses, that counsel for the plaintiff had conceded that, if the denial of the plaintiff's motion for summary judgment was legally correct, the defendants were entitled to judgment. We conclude, therefore, that the transcripts are sufficient to place before us a proper record on which we may review this appeal. In this light, we examine the provisions of the Common Interest Ownership Act and the documents placed before the court to ascertain whether those documents were sufficient to meet the statutory requirements to create a community interest thus giving the plaintiff standing to pursue those claims set forth in its complaint.

The heart of the Common Interest Ownership Act relates to the declaration as defined in General Statutes § 47-202 (13) and the data that it must contain as set forth in General Statutes § 47-224 (a) (1) through (14).[1]

[1] General Statutes § 47-224 (a) provides: "The declaration shall contain:

"(1) The names of the common interest community and the association and a statement that the common interest community is either a condominium, cooperative or planned community;

"(2) The name of every town in which any part of the common interest community is situated;

"(3) A legally sufficient description of the real property included in the common interest community;

"(4) A statement of the maximum number of units that the declarant reserves the right to create;

"(5) In a condominium or planned community, a description of the boundaries of each unit created by the declaration, including the unit's identifying number or, in a cooperative, a description, which may be by surveys or

Judge Stengel found that the recorded documents in the Southington land records identified as (1) "Revised

plans, of each unit created by the declaration, including the unit's identifying number, its size or number of rooms and its location within a building if it is within a building containing more than one unit;

"(6) A description of any limited common elements, other than those specified in subsections (2) and (4) of section 47-221, as provided in subdivision (10) of subsection (b) of section 47-228 and, in a planned community, any real property that is or must become common elements;

"(7) A description of any real property, except real property subject to development rights, that may be allocated subsequently as limited common elements, other than limited common elements specified in subsections (2) and (4) of section 47-221, together with a statement that they may be so allocated;

"(8) A description of any development rights, as defined in subsection (14) of section 47-202, and other special declarant rights, as defined in subsection (29) of section 47-202, reserved by the declarant, together with a legally sufficient description of the real property to which each of those rights applies and a time limit within which each of those rights must be exercised;

"(9) If any development right may be exercised with respect to different parcels of real property at different times, a statement to that effect together with (A) either a statement fixing the boundaries of those portions and regulating the order in which those portions may be subjected to the exercise of each development right or a statement that no assurances are made in those regards, and (B) a statement as to whether, if any development right is exercised in any portion of the real property subject to that development right, that development right must be exercised in all or in any other portion of the remainder of that real property;

"(10) Any other conditions or limitations under which the rights described in subdivision (8) of this subsection may be exercised or will lapse;

"(11) An allocation to each unit of the allocated interests in the manner described in section 47-226;

"(12) Any restrictions (A) on alienation of the units, including any restrictions on leasing which exceed the restrictions on leasing units which executive boards may impose pursuant to subdivision (2) of subsection (c) of section 47-244, and (B) on the amount for which a unit may be sold or on the amount that may be received by a unit owner on sale, condemnation or casualty loss to the unit or to the common interest community, or on termination of the common interest community;

"(13) The recording data for recorded easements and licenses appurtenant to or included in the common interest community or to which any portion of the common interest community is or may become subject by virtue of a reservation in the declaration; and

"(14) All matters required by sections 47-225 to 47-228, inclusive, sections 47-234 and 47-235 and subsection (d) of section 47-245."

Subdivision Map Emerald Ridge," (2) "Declaration of Protective Covenants and Easements" and (3) "Declaration of Reciprocal Easements, Easements and Maintenance Arrangement" lacked the required information to create a common interest community under the provisions of the Common Interest Ownership Act. Specifically, neither the restrictive covenants nor the reciprocal easement document contained any elements to satisfy § 47-224 (a) (1), (5), (6), (11), (13) and (14),[2] which "[t]he declaration *shall* contain . . . ." (Emphasis added.) General Statutes § 47-224 (a). We conclude, therefore, that after an examination of the data set forth in the aforementioned recorded documents, together with the many admissions by the plaintiff made in response to the defendants' December 12, 1997 requests for admissions, these documents clearly establish that many of the essential provisions required by the Common Interest Ownership Act to be included in a recorded declaration are lacking. See footnote 1.

The trial court correctly found that the lack of the data required by statute was the basis for the denial of the plaintiff's motion for summary judgment and the basis for granting the defendants' motions.

The judgment is affirmed.

In this opinion the other judges concurred.