# CHRISTIE MIKOLINSKI *v.* COMMISSIONER OF MOTOR VEHICLES
## (AC 17835)

O'Connell, C. J., and Schaller and Hennessy, Js.

Argued March 30—officially released November 9, 1999

*Jeffrey D. Brownstein*, with whom, on the brief, was *Gregory A. Thompson*, for the appellant (plaintiff).

*Priscilla J. Green*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

O'CONNELL, C. J. The plaintiff, Christie Mikolinski, appeals from the trial court's judgment dismissing her appeal from the decision of the defendant commissioner of motor vehicles (commissioner). The court sustained the commissioner's suspension of the plaintiff's license to operate a motor vehicle on the ground that she had operated her vehicle while her blood alcohol content was in excess of the limit prescribed in General Statutes (Rev. to 1997) § 14-227b (f), now § 14-227b (g).[1] The plaintiff claims that the court improperly concluded that (1) the initial stop of her vehicle was constitutionally valid, (2) her detention by the police for further investigation was proper and (3) there was probable cause to find that she was operating her vehicle on a public highway. We affirm the judgment of the trial court.

---

[1] General Statutes (Rev. to 1997) § 14-227b (f), now § 14-227b (g), provides in relevant part: "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both . . . (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis or *did such person submit to such test* or analysis, commenced within two hours of the time of operation, and *the results of such test or analysis indicated that the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight*; and (4) was such person operating the motor vehicle. . . ." (Emphasis added.)

The following facts and procedural history are relevant to this appeal. Between 11 p.m. on May 23, 1997, and 3 a.m. on May 24, 1997, the Southington police department conducted a sobriety checkpoint of eastbound and westbound traffic in the area of 1199 Meriden-Waterbury Turnpike. Signs were posted in each direction alerting motorists to the checkpoint, and routes exiting the turnpike were available to motorists in each direction who chose not to enter the checkpoint.

On May 24, 1997, at approximately 1:35 a.m., the plaintiff entered the checkpoint and stopped her vehicle. While the plaintiff was stopped, a police officer asked her a number of questions. He then directed the plaintiff to an adjacent parking lot where a second officer conducted a detailed investigation. Upon approaching the plaintiff's vehicle, the second officer smelled a strong odor of alcohol on the plaintiff's breath and noticed that her eyes were red and glassy. He administered several sobriety tests, all of which the plaintiff failed. The second officer then placed her under arrest for operating a motor vehicle while under the influence of liquor in violation of General Statutes § 14-227a.[2] The plaintiff was transported to the Southington police station, where she was advised of her rights and given an opportunity to contact an attorney. After electing not to call an attorney, she agreed to submit to a blood alcohol test, the results of which indicated

[2] General Statutes § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

that her blood alcohol content exceeded the statutory limit.[3]

On May 30, 1997, the commissioner sent a suspension notice to the plaintiff advising her that due to the results of the blood alcohol test, her license to operate a motor vehicle would be suspended for a ninety day period commencing on June 23, 1997. The notice offered the plaintiff an opportunity, pursuant to § 14-227b, to attend a hearing to contest the suspension prior to the effective date of the suspension.

The hearing was held before a hearing officer, acting for the commissioner, who determined that the four requirements of § 14-227b (f) were met.[4] The plaintiff appealed to the trial court, which affirmed the decision of the commissioner and dismissed the appeal. This appeal followed.

I

REVIEWABILITY

We must first address the threshold question of whether this appeal is reviewable. The record on appeal does not contain a written memorandum of decision or a transcribed copy of an oral decision signed by the trial court. See Practice Book § 64-1 (a), formerly § 4059 (a).[5] The duty to provide this court with a record adequate for review rests with the appellant. Practice Book

---

[3] See footnote 1.

[4] See footnote 1.

[5] At the time this appeal was taken, Practice Book § 4059 (a), now § 64-1, provided as follows: "Except in small claims actions and as provided in Sec. 4060 [now § 64-2], (1) in judgments in trials to the court in civil and criminal matters, (2) in decisions on aggravating and mitigating factors in capital penalty hearings conducted to the court, (3) in decisions upon motions to dismiss under Sec. 814 [now § 41-8], (4) in decisions on motions to suppress under Sec. 820 [now § 41-12], and (5) in decisions granting a motion to set aside a verdict under Sec. 320 [now § 16-35], and (6) in any other decisions which constitute a final judgment for purposes of appeal under Sec. 4000 [now § 61-1], but do not terminate the proceedings, the court shall, either orally or in writing, state its decision on the issues in the matter. The court shall include in its decision its conclusion as to each

§ 61-10, formerly § 4007; *Auric Answering Service, Inc.* v. *Glenayre Electronics, Inc.*, 54 Conn. App. 86, 87, 733 A.2d 307, cert. denied, 250 Conn. 926, 738 A.2d 653 (1999). This court has repeatedly emphasized the importance of compliance with Practice Book § 64-1 and has frequently declined to review claims when the appellant fails to provide the court with an adequate record for review. *State* v. *Beliveau*, 52 Conn. App. 475, 480–81, 727 A.2d 737, cert. denied, 249 Conn. 920, 733 A.2d 235 (1999); *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 608–609, 710 A.2d 190 (1998); *Emigrant Savings Bank* v. *Erickson*, 46 Conn. App. 51, 53–54, 696 A.2d 1057, cert. denied, 243 Conn. 921, 701 A.2d 341 (1997); *State* v. *Rios*, 30 Conn. App. 712, 714–15, 622 A.2d 618 (1993). More specifically, we have declined to afford review where the "record on appeal" failed to contain a signed copy of the trial court's oral memorandum of decision. *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, supra, 607–609; *Emigrant Savings Bank* v. *Erickson*, supra, 53–54.

The requirements of Practice Book § 64-1 are not met by simply filing with the appellate clerk a transcript of the entire trial court proceedings. *Tolchinsky* v. *East Lyme*, 43 Conn. App. 456, 457, 683 A.2d 747 (1996); see *State* v. *Yopp*, 35 Conn. App. 740, 749–50, 646 A.2d 298 (1994) (declining review when neither written memorandum of decision nor transcript signed by trial court was included in record). A transcript is not even required to be filed in all appeals. See Practice Book § 63-4 (a) (3), formerly § 4013.[6] Moreover, a transcript

claim of law raised by the parties and the factual basis therefor. If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial judge shall order the decision transcribed and the transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office."

[6] Practice Book § 63-4 (a), formerly § 4013, provides in relevant part: "At the time the appellant sends a copy of the endorsed appeal form and the docket sheet to the appellate clerk, the appellant shall also send the appellate clerk an original and one copy of . . .

of colloquies between the trial court and counsel is of limited, if any, assistance to the reviewing court. Thus, we have held that the signature of the trial court on an entire trial transcript does not satisfy Practice Book § 64-1. *Auric Answering Service, Inc.* v. *Glenáyre Electronics, Inc.*, supra, 54 Conn. App. 88. Perhaps of greater significance is the fact that the Appellate Court is not even required to consult a transcript, although it may do so in a proper case. Practice Book § 67-1, formerly § 4064.[7] Thus, it is more than possible that significant matters that are only in the transcript and not in the briefs or appendices may not come to the attention of the reviewing court. This is because they are not in the "record on appeal."

A discussion of what we mean by the "record on appeal" may be helpful. The chief clerk of the Appellate Court is responsible for the preparation and certification of the record on appeal. Practice Book § 68-2, formerly § 4085.[8] "Counsel have no responsibility for the preparation of the record other than [that] the appellant and appellee must submit (1) a preliminary statement of issues on appeal; (2) a designation of the specific trial pleadings that they deem necessary to include in

"(3) A certificate stating that no transcript is deemed necessary, or a copy of the transcript order acknowledgement form . . . ."

[7] Practice Book § 67-1, formerly § 4064, provides in relevant part: "The evidence referred to in the brief, and in the appendix if one is filed, will be deemed to embrace all testimony produced at the trial material to the issues on the appeal, although the court *may*, if sufficient cause appears, consult the transcript of evidence on file or the trial court case file to supplement or explain the evidence. . . ." (Emphasis added.)

[8] Practice Book § 68-2, formerly § 4085, provides: "As soon as possible after the filing of the appellant's brief, the appellate clerk shall prepare and certify the record for use upon the hearing in the court having appellate jurisdiction of any case the file of which has been delivered to or prepared by such clerk.

"Upon certification of the record by the appellate clerk, the appellant shall cause the record to be photocopied in accordance with these rules."

the record; and (3) a docketing statement detailing certain background information on the case and the parties. If a party believes the trial record is defective or inadequate, he must resort to a motion for rectification or articulation." C. Tait, Connecticut Appellate Practice and Procedure (2d Ed. 1993) § 4.3 (a). An example of a defective or inadequate record requiring rectification would be the omission by the clerk of the trial court's written or transcribed oral decision.

"To determine what to include, the chief clerk must study the case with sufficient care and study the designation of contents of records required to be submitted by the parties. In preparing the record, the chief clerk is permitted to confer with counsel and with the clerk of the court. Although the clerk is responsible for the preparation of the record, the appellant should double check to [e]nsure that all necessary portions are included because an inadequate record may generate an appellate remand or refusal to review." (Internal quotation marks omitted.) Id., § 4.4 (a).

"In a case tried to the court, the record must contain the decision of the trial judge. If the decision was in writing, the record should include the memorandum of decision. If the decision was oral, the record should include the court reporter's transcription of the court's decision, signed by the judge."[9] Id., § 4.4 (b). We note that our rules of practice do not provide for the inclusion of the trial transcript as part of the record on appeal. In fact, the contrary is true. "The rules state that no portion of the transcript of evidence should be designated for inclusion, a proscription that also applies to the clerk in the actual printing of the record." Id., § 3.20; see Practice Book § 63-4 (a) (2).

---

[9] Practice Book § 68-11, formerly § 4096, provides: "The oral or written decision shall become a part of the record on appeal. See Sections 64-1 and 64-2."

In the present case, therefore, we could decline to review the appeal on the ground that the trial court's oral decision, as transcribed, was not included in the record on appeal. On occasion, however, there have been cases in which we have reviewed claims of error despite an unsigned transcript because the transcript contained a sufficiently detailed and concise statement of the trial court's findings.[10] *Emerald Ridge Property Owners Assn.* v. *Thornton,* 54 Conn. App. 6, 8, 732 A.2d 804 (1999); *State* v. *Sandra O.,* 51 Conn. App. 463, 465, 724 A.2d 1127 (1999).

This is one of those cases. Although the plaintiff was derelict in her duty to furnish an appropriate record, the defendant has come to her rescue by including, in his appendix, an unsigned copy of the transcript of the trial court's oral decision.[11] The posture of this appeal,

[10] We do not intend this opinion to be critical of the trial court, which properly stated its findings of fact and conclusions of law in accordance with the letter and spirit of Practice Book § 4059, now § 64-1. See footnote 5. The problem arose when appellate counsel failed to take the necessary steps to have the transcribed oral decision signed and filed as part of the record on appeal.

[11] The trial court in an oral decision stated as follows: "I'm prepared to rule on this case. Regarding the issue of the checkpoint stop. In *State* v. *Boisvert,* 40 Conn. App. 420, [426, 671 A.2d 834, cert. denied, 237 Conn. 903, 674 A.2d 1332 (1996)] the court holds: 'Minimal intrusion in the interest of public safety may be allowed in the form of checkpoint stops when the stop is conducted pursuant to a practice embodying neutral criteria.' Now in that case, which of course was a criminal case and involved an operating under the influence checkpoint, they did have extensive information about the state procedures that were followed, the state police procedures. . . .

"Now, as to the second issue that [the plaintiff's counsel] raises, when you send someone from the checkpoint for further testing, reasonable, articulable suspicion has to exist. I think, you know, that for the purposes of an administrative appeal, it's not the weight of the evidence, it's whether substantial evidence exists, and I think it's a reasonable inference to make that if the other officer shortly after notices a strong odor of alcohol as he approached [the plaintiff's] vehicle, that odor of alcohol would have existed shortly before that, and her reddened, glossy eyes would similarly have existed before that.

"On the public highway issue, I've looked at the cases cited, and the cases that involve administrative hearings are the parking lot cases, which I think

therefore, is that we have before us an unsigned copy of the court's decision although the plaintiff has failed to make it a part of the record on appeal. To refuse to review the appeal because it was furnished by the wrong party and because the court's signature is lacking would exalt form over substance. *Connecticut National Bank* v. *Browder*, 30 Conn. App. 776, 778–79, 622 A.2d 588 (1993) (where transcript contained detailed and concise statement of trial court's findings and conclusions, this court reviewed defendants' claim on appeal in absence of written memorandum or signed transcript of oral decision so as not to exalt form over substance). Accordingly, because we can discern the court's reasoning from the material furnished to us by the defendant, we will exercise our discretion and review the appeal.

## II

## CONSTITUTIONALITY

The plaintiff first claims that there was insufficient evidence of probable cause for her arrest because the initial stop was unconstitutional. We commence our analysis by noting that review of the commissioner's action is highly restricted. *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 506, 636 A.2d 409, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994). Neither the trial court nor this court may retry the case or substitute its judgment for that of the commissioner. *Buckley* v. *Muzio*, 200 Conn. 1, 3, 509 A.2d 489 (1986). "In order to sustain an administrative decision, all that is required is that the determination be reasonably supported by the evidence in the record. . . . [T]he plaintiff bears the burden of proving that the commissioner's

are distinguishable from this case. The reference to the Meriden-Waterbury Turnpike suggests a public highway, the fact that the Southington police chose this road to establish a checkpoint also suggests that it's a public highway. So I find that there is substantial evidence that it is a public highway.

"Clearly, she was operating, the officers had probable cause, as clearly demonstrated in the report, and she was tested and exceeded the limits, and was, of course, arrested. So I'm going to dismiss the appeal."

decision to suspend a motor vehicle operating privilege was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." (Citation omitted; internal quotation marks omitted.) *Costello* v. *Kozlowski*, 47 Conn. App. 111, 114–15, 702 A.2d 1197 (1997). Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue reasonably could be inferred. *Sweetman* v. *State Elections Enforcement Commission*, 249 Conn. 296, 331, 732 A.2d 144 (1999). Accordingly, "if there is evidence . . . which reasonably supports the decision of the commissioner, [the trial court] cannot disturb the conclusion reached by him." *DiBenedetto* v. *Commissioner of Motor Vehicles*, 168 Conn. 587, 589, 362 A.2d 840 (1975).

The plaintiff contends that the checkpoint stop was an unconstitutional seizure. It is well established law that even though stopping a vehicle at a checkpoint is a seizure under both the federal[12] and state[13] constitutions, such investigatory seizures and detention are permitted under both constitutions. *Michigan Dept. of State Police* v. *Sitz*, 496 U.S. 444, 450, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990);[14] *State* v. *Boisvert*, 40 Conn. App. 420, 426, 671 A.2d 834, cert. denied, 237 Conn. 903, 674 A.2d 1332 (1996).

---

[12] The fourth amendment to the United States constitution states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[13] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[14] In *Michigan Dept. of State Police* v. *Sitz*, supra, 496 U.S. 450, the United States Supreme Court upheld the constitutionality of the "use of sobriety checkpoints generally."

This court has held that a roadside checkpoint, established for the purpose of detecting violations of § 14-227a (a), does not violate our state constitution. *State v. Boisvert,* supra, 40 Conn. App. 426. We concluded in that decision that "sobriety checkpoints are a valid exercise of police power under our state constitution, that no requirement of a 'reasonable or articulable suspicion' must exist for the initial stop, and that the balancing test . . . is the proper test to be utilized. That test determines whether the strength of the public interest in combating the threat to public safety of operators of motor vehicles whose ability to operate may be impaired due to the consumption of intoxicating liquor, and the effectiveness of roadside checkpoints outweigh the minimal intrusion on a motorist's privacy." Id.

In balancing the public interest in safety against the privacy rights of motor vehicle operators, "[m]inimal intrusion in the interest of public safety may be allowed in the form of checkpoint stops when the stop is conducted pursuant to a practice embodying neutral criteria." Id. The proper approach is to apply the balancing test on a case-specific basis to ensure that "[a] citizen's reasonable right to privacy [is not] subject to random or arbitrary intrusions merely at the whim of law enforcement." Id.

In the present case, the record reflects that the Southington police set up a checkpoint, stopped traffic going in both directions, posted signs alerting drivers to the checkpoint's existence and provided them with the opportunity to exit the turnpike prior to the checkpoint. All vehicles that entered the checkpoint were stopped. The officers asked specific questions to each operator and looked for signs that the operator might be under the influence of intoxicating liquor or drugs.

Our review of the circumstances surrounding the checkpoint satisfies us that the stop of the plaintiff's

vehicle did not subject her to a random or arbitrary intrusion. The court reasonably could have concluded that the checkpoint was operated according to neutral guidelines,[15] and that the underlying facts justified the hearing officer's conclusion that the need to deter fatal and personal injuries clearly outweighed the minor intrusion on the operator's right to privacy.

## III

## ARTICULABLE SUSPICION[16]

The plaintiff next claims that the police improperly detained her for further investigation. As stated in part II of this opinion, there is no requirement of a reasonable or articulable suspicion to effectuate a valid stop at a checkpoint. Id. For the officer to continue his investigation, however, he must have a reasonable and articulable suspicion that the person has committed or is about to commit a crime. See *Price-Crowley* v. *Kozlowski*, 49 Conn. App. 481, 485, 714 A.2d 719, cert. denied, 247 Conn. 919, 722 A.2d 811 (1998). The plaintiff argues that, because the record does not evidence a reasonable or articulable suspicion as to why the first officer detained the plaintiff for additional questioning, the continued detainment was unconstitutional. More specifically, the plaintiff bases her argument on the fact that the A-44 police form was completed by the second officer, and not the first officer. We are not persuaded.

"[I]f the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must be

---

[15] The plaintiff improperly assumes that the guidelines promulgated in the department of public safety's administrative and organizational manual apply to local police departments as well as to the state police.

[16] The parties did not raise and we do not decide the following: Is the question of whether the police have reasonable and articulable suspicion to justify an investigative stop outside the scope of the four issues to be considered at a § 14-227b license suspension hearing.

upheld." (Internal quotation marks omitted.) *Bialowas* v. *Commissioner of Motor Vehicles*, 44 Conn. App. 702, 709, 692 A.2d 834 (1997). Under the substantial evidence rule, evidence is sufficient to sustain an agency's finding if it affords a substantial basis of fact from which the fact in issue reasonably can be inferred. Id.

Here, the original officer stopped the plaintiff when she entered the checkpoint. Upon questioning her, the first officer directed her to pull into a nearby parking lot for further investigation by a second officer. The plaintiff claims that there is no articulable suspicion for continuing the investigation with a second officer because there is nothing in the record from the first officer to support it. The second officer, who continued the investigation, clearly stated in his A-44 form that he smelled a strong odor of alcohol as he approached the plaintiff and that her eyes were red and glassy.[17] The hearing officer logically could have inferred that, if the second officer noticed a strong odor of alcohol and observed the plaintiff's red, glassy eyes, those characteristics existed moments before and that the first officer relied on them as his articulable suspicion for the extension of the initial stop. Accordingly, we conclude that there was substantial evidence to support

[17] The plaintiff's brief states that she objected to the admission into evidence before the hearing officer of the form A-44 police report. The following excerpt from the transcript of the hearing does not support this.

"My name is William Grady and I will be the hearing officer. At this hearing, the form prescribed by subsection (c) of § 14-227b, the A-44 form, will be offered for evidence. Attorney [for the plaintiff], would you identify yourself for the record.

"Plaintiff's Counsel: Yes, good afternoon Mr. Commissioner, my name is Gregory Thompson.

"Hearing Officer: Thank you. At this time I would offer to be placed into evidence and marked as state's exhibit A, a copy of the A-44, test record and a five page supplement. Any objection?

"Plaintiff's Counsel: Yes, commissioner. *No as to the A-44*, yes as to the attached narrative." (Emphasis added.)

The A-44, as well as the attached narrative, was admitted into evidence by the hearing officer.

the finding that a reasonable and articulable suspicion existed to warrant further investigation.

## IV

## PUBLIC HIGHWAY

The plaintiff's final claim is that the police lacked probable cause to arrest her for operation of a motor vehicle on a public highway.[18] The plaintiff relies on the fact that the A-44 form is defective because the police officer failed to put a check mark in a box on the form labeled "Operation on a Public Road." This argument must fail.

A similar omission occurred in *Volck* v. *Muzio*, 204 Conn. 507, 518, 529 A.2d 177 (1987), where the endorsement by a witness to the refusal to take a blood alcohol test was omitted from the police report. Because no objection was raised to the admission of the report at the license suspension hearing, our Supreme Court held that consideration of it by the hearing officer was not improper and the absence of the endorsement did not preclude reliance on the form to justify suspension of the plaintiff's license to operate a motor vehicle. Id.

In the present case, the plaintiff attempts to distinguish *Volck* on the grounds that the plaintiff in *Volck* failed to object to the defective report, whereas the plaintiff in this case objected to its admission. The plaintiff, however, expressly stated, through counsel, that she had no objection to the admission of the A-44 form, although she did object to the narrative attached thereto.[19] Additionally, at the hearing before the trial court, the plaintiff's counsel expressly acknowledged the failure to object to the admission of the A-44 form

---

[18] See footnote 2.

[19] See footnote 17.

at the motor vehicle hearing.[20] Accordingly, *Volck* is directly on point.

The plaintiff further argues that there is nothing in the record from which a hearing officer reasonably could infer that the location where the plaintiff was stopped was a public highway. The question of whether a roadway is a public highway is a question of fact. *Ventres* v. *Farmington*, 192 Conn. 663, 666–67, 473 A.2d 1216 (1984). Except for the missing check mark, there is nothing in the A-44 form, or the narrative attached thereto, that gives any suggestion that the Meriden-Waterbury Turnpike is not a public highway. In fact, the opposite is true. To conclude that it was not a public highway, we would have to commence with the assumption that the Southington police went onto private property to set up a sobriety checkpoint. Without supporting evidence, that is not a reasonable assumption.

Furthermore, this was not a criminal prosecution in which the state had the burden of proving every element beyond a reasonable doubt. This was an appeal from an administrative hearing in which the plaintiff had the burden of showing that the commissioner, through his hearing officer, acted contrary to law and in abuse of his discretion. *Demma* v. *Commissioner of Motor Vehicles*, 165 Conn. 15, 17, 327 A.2d 569 (1973). The silence of the record as to an issue does not satisfy the plaintiff's burden of proof. See *Grillo* v. *Zoning Board of Appeals*, 4 Conn. App. 205, 207, 493 A.2d 275 (1985). This claim, therefore, has no merit.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[20] In the trial court, the plaintiff's counsel stated: "The last issue is simply that I believe, unfortunately, that the A-44 was not objected to, from what I understand, as being admitted into evidence."