STATE OF CONNECTICUT *v.* CHRISTIE MIKOLINSKI
(AC 17866)

Lavery, Schaller and Hennessy, Js.

Argued September 29—officially released December 28, 1999

*Jeffrey D. Brownstein,* with whom, on the brief, were *Robert J. McKay* and *Gregory A. Thompson,* for the appellant (defendant).

*Eileen McCarthy Geel,* assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Brian Preleski,* assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Christie Mikolinski, appeals from the judgment of conviction, rendered after a trial to the court, of operation of a motor vehicle while under the influence of liquor in violation of General Statutes § 14-227a.[1] On appeal, the defendant claims that the trial court improperly concluded that (1) the detention of her vehicle pursuant to a sobriety checkpoint was constitutionally valid, (2) there was sufficient evidence presented to prove that she was the driver arrested at the sobriety checkpoint and (3) there was

---

[1] General Statutes § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

sufficient evidence that the defendant was operating her vehicle on a public highway. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. "Between 11 p.m. on May 23, 1997, and 3 a.m. on May 24, 1997, the Southington police department conducted a sobriety checkpoint of eastbound and westbound traffic in the area of 1199 Meriden-Waterbury Turnpike. Signs were posted in each direction alerting motorists to the checkpoint, and routes exiting the turnpike were available to motorists in each direction who chose not to enter the checkpoint.

"On May 24, 1997, at approximately 1:35 a.m., the [defendant] entered the checkpoint and stopped her vehicle. While the [defendant] was stopped, a police officer asked her a number of questions." *Mikolinski* v. *Commissioner of Motor Vehicles*, 55 Conn. App. 691, 693, 747 A.2d 518 (1999). After the defendant admitted that she had been drinking alcohol, the officer "directed [her] to an adjacent parking lot where a second officer conducted a detailed investigation. Upon approaching the [defendant's] vehicle, the second officer smelled a strong odor of alcohol on the [defendant's] breath and noticed that her eyes were red and glassy. He administered several sobriety tests, all of which the [defendant] failed. The second officer then placed her under arrest for operating a motor vehicle while under the influence of liquor in violation of General Statutes § 14-227a." Id.[2]

---

[2] In *Mikolinski* v. *Commissioner of Motor Vehicles*, supra, 55 Conn. App. 691, the defendant appealed from the trial court's judgment sustaining the decision of the commissioner of motor vehicles to suspend her operator's license. In that case, this court set forth the facts and addressed many of the issues raised by the defendant in this appeal. Due to the different standards of review for an administrative license suspension and a criminal proceeding; see *Kirei* v. *Hadley*, 47 Conn. App. 451, 455, 705 A.2d 205 (1998); we must review similar issues raised in *Mikolinski* v. *Commissioner of Motor Vehicles*, supra, 691.

At trial, the defendant filed a motion to suppress evidence obtained from her as a result of her detention and a motion for judgment of acquittal at the conclusion of the state's case. The court denied both motions.

I

The defendant first claims that the trial court improperly concluded that her detention at the sobriety checkpoint was constitutionally valid.

A

The defendant claims that her detention violates article first, § 7, of the constitution of Connecticut and federal constitutional principles in that the detention was an unreasonable seizure without a reasonable and articulable suspicion, and that the evidence obtained as a result thereof should have been suppressed. We disagree.

In its memorandum of decision, the court noted that the checkpoint was constitutionally valid, having found that the procedures used embodied the same neutral criteria as the checkpoint that was upheld in *State* v. *Boisvert*, 40 Conn. App. 420, 426, 671 A.2d 834, cert. denied, 237 Conn. 903, 674 A.2d 1332 (1996). "On appeal, it is the function of this court to determine whether the decision of the court is clearly erroneous." (Internal quotation marks omitted.) *State* v. *Torres*, 197 Conn. 620, 625, 500 A.2d 1299 (1985).

"It is well established law that even though stopping a vehicle at a checkpoint is a seizure under both the federal and state constitutions, such investigatory seizures and detention are permitted under both constitutions. *Michigan Dept. of State Police* v. *Sitz*, 496 U.S. 444, 450, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990); *State* v. *Boisvert*, [supra, 40 Conn. App. 426]." *Mikolinski* v. *Commissioner of Motor Vehicles*, supra, 55 Conn. App. 700. In *State* v. *Boisvert*, supra, 426, this court concluded

that "sobriety checkpoints are a valid exercise of police power under our state constitution, that no requirement of a 'reasonable and articulable suspicion' must exist for the initial stop, and that the balancing test . . . is the proper test to be utilized. That test determines whether the strength of the public interest in combating the threat to public safety of operators of motor vehicles whose ability to operate may be impaired due to the consumption of intoxicating liquor, and the effectiveness of roadside checkpoints outweigh the minimal intrusion on a motorist's privacy." Accordingly, this court held that "[m]inimal intrusion in the interest of public safety may be allowed in the form of checkpoint stops when the stop is conducted pursuant to a practice embodying neutral criteria." Id. Similarly, the United States Supreme Court has upheld the constitutionality of the "use of sobriety checkpoints generally." *Michigan Dept. of State Police* v. *Sitz*, supra, 450.

In the present case, the court found that the sobriety checkpoint was conducted according to guidelines established by the Southington police department that were substantially the same as the state police guidelines upheld in *State* v. *Boisvert*, supra, 40 Conn. App. 426. The court noted that the Southington police had established a method of operation approved by ranking officers, that a safe location had been chosen, that posted signs alerted drivers to the checkpoint's existence and provided them with the opportunity to exit before entering the checkpoint, that every car was stopped and that the officers had been instructed to ask each motorist a specific set of questions. We hold that the trial court's finding that the checkpoint embodied neutral criteria was not clearly erroneous, and, thus, that court properly determined that the checkpoint was constitutional under article first, § 7, of the constitution of Connecticut and under the federal constitution.

## B

The defendant claims next that her detention violated article first, § 9, of the constitution of Connecticut, which provides that "[n]o person shall be arrested, detained or punished, except in cases clearly warranted by law."[3] The defendant maintains that without a reasonable and articulable suspicion, the police could not detain her at a roadside sobriety check stop pursuant to article first, § 9. We disagree.

Article first, § 9, has generally been characterized as guaranteeing due process of law. *State* v. *Lamme*, 216 Conn. 172, 177, 579 A.2d 484 (1990). The text of article first, § 9, "indicates that the specific content appropriately to be assigned to the phrase 'clearly warranted by law' depends on the particular liberty interest that is at stake." Id., 178. "[Section] 9's separate inclusion of arrests and detentions counsels against finding an intent to impose a constitutional requirement for a parity of treatment between the greater intrusion on personal freedom represented by an arrest and the lesser intrusion represented by a detention." Id.

In *State* v. *Lamme*, supra, 216 Conn. 172, the police had legally stopped the defendant for operating a motor vehicle without illuminated headlights and subsequently detected the odor of alcohol on his breath. His detention for sobriety testing, without probable cause for arrest, was found to be permissible because the

---

[3] While the defendant in *State* v. *Boisvert*, supra, 40 Conn. App. 422, claimed that the roadside sobriety checkpoint violated article first, §§ 7 and 9, of the Connecticut constitution, this court declined to address the § 9 claim as it was raised for the first time on appeal. Id., 423 n.5. This court did note, however, that if it were "to consider the defendant's claims pursuant to article first, § 9, one of our state constitutional provisions that guarantees due process of law, we would be guided by our Supreme Court's holding that a brief investigatory detention, even without probable cause, passes state constitutional muster." Id., citing *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990).

principles of due process permit a brief investigatory detention "if the police have a reasonable and articulable suspicion that a person has committed or is about to commit a crime." Id., 184. Accordingly, our Supreme Court held that "the principles underlying constitutionally permissible *Terry*[4] stops, as further construed in cases such as *United States* v. *Hensley*, [469 U.S. 221, 227, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985)], and *Florida* v. *Royer*, [460 U.S. 491, 498, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)], define when detentions are 'clearly warranted by law' under article first, § 9." *State* v. *Lamme*, supra, 184.

In the present case, however, the police did not have a reasonable and articulable suspicion to detain the defendant at the roadside sobriety checkpoint. The policy of the police at the checkpoint was to stop every car regardless of whether there was suspicion of illegal activity. The principles of due process, however, warrant the holding that this roadside sobriety checkpoint is permitted under article first, § 9, of the constitution of Connecticut.

In deciding that a brief detention was permissible under article first, § 9, our Supreme Court noted in *State* v. *Lamme*, supra, 216 Conn. 184, that "[b]alancing the circumscribed nature of a *Terry* stop intrusion against the serious risks of criminal behavior, especially in the context of the risks associated with driving while under the influence of intoxicating liquor, we are persuaded that the defendant's brief detention did not violate his due process rights." Similarly, after balancing the limited detention involved with a roadside checkpoint against the risks of driving under the influence of alcohol, we conclude that the roadside sobriety checkpoint in this case did not violate the defendant's due process rights. "The state has a vital interest in keeping intoxi-

---

[4] *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

cated drivers off the roads and highways." *State* v. *Lamme*, 19 Conn. App. 594, 599, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990). Balanced against that strong state interest is the relatively minor intrusiveness of a roadside sobriety checkpoint, where police detain individuals in their cars only for a short period of time and ask a few questions.

Our Supreme Court adopted federal constitutional precedents to illuminate the provisions of article first, § 9, of the Connecticut constitution. *State* v. *Lamme*, supra, 216 Conn. 184. We note particularly the decision of the United States Supreme Court in *Michigan Dept. of State Police* v. *Sitz*, supra, 496 U.S. 444, in which the court upheld roadside sobriety checkpoints under the fourth and fourteenth amendments[5] to the United States constitution. Despite the "reasonable and articulable suspicion" requirement for detentions as delineated in *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the United States Supreme Court held the roadside sobriety checkpoint detention to be constitutional, without a reasonable and articulable suspicion, because the state's interest outweighed the "slight" measure of intrusion on motorists and the checkpoint reasonably advanced the state's interest.[6] *Michigan Dept. of State Police* v. *Sitz*, supra, 451, 455.

---

[5] The fourteenth amendment to the United States constitution provides that no state shall "deprive any person of life, liberty or property, without due process of law . . . ."

[6] The Supreme Court stated in *Michigan Dept. of State Police* v. *Sitz*, supra, 496 U.S. 450–51, that "the instant action challenges only the use of sobriety checkpoints generally. We address only the initial stop of each motorist passing through a checkpoint and the associated preliminary questioning and observation by checkpoint officers. Detention of particular motorists for more extensive field sobriety testing may require satisfaction of an individualized suspicion standard." Similarly, we are only addressing the initial stop of an individual at a roadside sobriety checkpoint. For the police to conduct the more detailed field sobriety tests, they must have a reasonable and articulable suspicion that the individual was under the influence of alcohol. *State* v. *Lamme*, supra, 216 Conn. 172.

In the present case, the sobriety checkpoint was conducted pursuant to guidelines established by the Southington police department, which the trial court found to be substantially the same as the state police guidelines, titled "Spot Checks," from the department of public safety's administration and organizational manual.[7] The guidelines embody neutral criteria, including a plan to stop every car at a safe location, to ask only a few uniform questions and to provide warning signs with alternative routes so motorists could avoid the sobriety checkpoint. Weighing the gravity of public concern regarding the operation of motor vehicles under the influence of alcohol against the intrusiveness on the individual's liberty during roadside sobriety checkpoints, we are persuaded that the defendant's brief detention at the checkpoint did not violate her due process rights. We hold, therefore, that the roadside checkpoint does not violate article first, § 9, of the constitution of Connecticut.

## II

The defendant next claims that there was insufficient evidence presented to prove that she was the driver arrested at the roadside sobriety checkpoint. We disagree.

"The standard of review of an insufficiency claim is twofold. We first review the evidence presented at trial, construing it in the light most favorable to sustaining the facts expressly found by the trial court or impliedly found by the jury. We then decide whether, upon the facts thus established and the inferences reasonably drawn therefrom, the trial court or the jury could reasonably have concluded that the cumulative effect of

---

[7] The Southington police department is not bound by guidelines "promulgated in the department of public safety's administrative and organizational manual . . . ." *Mikolinski* v. *Commissioner of Motor Vehicles*, supra, 55 Conn. App. 702 n.15.

the evidence established the defendant's guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Harris*, 227 Conn. 751, 757, 631 A.2d 309 (1993).

On the basis of the evidence and the inferences reasonably drawn therefrom, the court could have concluded beyond a reasonable doubt that the defendant was the woman arrested May 24, 1997, for violation of § 14-227a. The court noted that both police officers who detained the defendant identified her by name during the trial and observed her presence in court. The first officer testified that he had a personal recollection of stopping the defendant at the sobriety checkpoint. He specifically recalled introducing himself to the defendant and her admission that she had just consumed a "few beers." Likewise, the second officer testified that he recalled approaching the defendant's car and smelling the alcohol on her breath. He also had a specific recollection of the defendant's performance during the sobriety test. Although neither officer was requested to point to the defendant in court, both officers testified that they specifically recalled the defendant and her condition on the night of the roadside sobriety check stop. We conclude that there was sufficient evidence of identification for the court to have found beyond a reasonable doubt that the defendant was the woman arrested at the roadside sobriety checkpoint on May 24, 1997.

### III

The defendant claims next that there was insufficient evidence to prove beyond a reasonable doubt that she was operating her motor vehicle on a public highway as required by § 14-227a.[8] We disagree.

The question of whether a roadway is a public highway is a question of fact. *Ventres* v. *Farmington*, 192

---

[8] See footnote 1.

Conn. 663, 666–67, 473 A.2d 1216 (1984). The trial court noted in its memorandum of decision that both police officers testified that the defendant operated her motor vehicle on a public highway, specifically, Connecticut State Route 322 when she was detained at the sobriety checkpoint.[9] We hold that there was sufficient evidence for the court reasonably to have concluded that the defendant was operating her motor vehicle on a public highway.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] A Southington police sergeant testified as follows:

"Q: On what street was this checkpoint set up?

"A: Meriden-Waterbury Turnpike, which is Connecticut State Route 322.

"Q: And, that is a public highway here in the state of Connecticut?

"A: Yes, it is."