SUMMERBROOK WEST, L.C. *v.*
GEOFFREY FOSTON ET AL.
(AC 18326)

Lavery, Landau and Hennessy, Js.

Argued September 14, 1999—officially released January 11, 2000

*William F. Healy*, for the appellant (plaintiff).

*James V. Somers*, for the appellee (Right Property Management Company, Inc.).

*Opinion*

LAVERY, J. The substitute plaintiff, Summerbrook West, L.C. (Summerbrook), appeals from the trial court's judgment denying Summerbrook's motion for permission to bring an action against the court-appointed receiver of the real property that is the subject of this foreclosure action. Summerbrook claims that the court improperly found that it failed to establish a prima facie case that the receiver exceeded its authority. We affirm the judgment of the trial court.

The pertinent facts are as follows. In August, 1993, CTB Realty Services, Inc. (CTB Realty), the original plaintiff, brought a foreclosure action on an apartment complex located at 510–554 Saw Mill Road in West Haven (premises). In October, 1993, CTB Realty moved for the appointment of a receiver to collect rents, to pay maintenance and operating expenses and to manage the premises, including the negotiation of leases, the hiring of necessary employees and the making of reasonably necessary repairs. The court granted the motion and appointed Right Property Management Company, Inc.

(Right Property), as receiver.[1] The court also ordered Right Property to post a $250,000 bond, which it thereafter posted. In March, 1994, the court granted permission for BCS Acquisition, L.P. (BCS Acquisition), the assignee of the mortgage deed and note, to be substituted as the plaintiff in lieu of CTB Realty. Later that month, the court rendered judgment of strict foreclosure, and the named defendant appealed to this court. We affirmed the judgment of strict foreclosure in *CTB Realty Services, Inc.* v. *Foston*, 36 Conn. App. 929, 651 A.2d 290 (1994).

In July, 1995, Summerbrook, the assignee of BCS Acquisition, was substituted as the party plaintiff. Also in the summer of 1995, Right Property moved to be discharged as receiver, and to have its final accounting and fees accepted. Before Right Property's motions were heard, Summerbrook moved for the court's permission to bring an action against Right Property for mismanaging the premises and committing waste by failing to keep the premises in good repair and to minimize vacancies.[2] In its motion, Summerbrook alleged that Right Property had taken direction from BCS Acquisition regarding the management of the premises in derogation of the court's order of appointment.

The court held a hearing on Summerbrook's motion on March 28, 1998.[3] In support of its motion, Sum-

---

[1] Right Property was not a party to the foreclosure action in the trial court. After this appeal was taken, Right Property moved for permission to be made a party for purposes of appeal. We remanded the motion to the trial court, which granted the motion.

[2] The motion was filed pursuant to Practice Book § 21-23, which provides: "The court in which the action is pending, or the appointing judge, may make such orders for the governance of the receiver as circumstances require. The judge shall certify any order passed by the judge in chambers to the court in which the action may be pending."

[3] Prior to the hearing, the court accepted Right Property's accounting, approved its fees and discharged it as receiver, but did not release the bond Right Property had posted.

merbrook offered into evidence a July 5, 1995 letter (letter) from Right Property's president, Frederick Mott, to Rene Rodriguez of Summerbrook.[4] Summerbrook also put into evidence a financial statement summarizing the income and expenditures related to the premises during the time Right Property served as receiver. Summerbrook claimed that the sentence in the letter stating, "Our direction from BCS [Acquisition] was to minimize all expenses when operating the property, and the new note-holders wanted the property with as many vacancies as possible," was sufficient proof that the receiver took direction from someone other than the court. The court disagreed, concluding that the sentence was not proof that the receiver had followed the direction given by BCS Acquisition. Thereafter, Summerbrook presented testimony from Mott.

On the basis of the two exhibits and Mott's testimony, the court ruled from the bench, stating, "Well, there is

[4] The letter states as follows:

"Thank you for your letter of July 1. Although I realized that you [were] in the process of closing the purchase of a note from BCS [Acquisition] for some time, I was not aware that the transaction had been consummated.

"Also, I am sure you are aware [that] our reporting responsibilities to the court require us to file income and expense statements on a quarterly basis. These records are available through the court. We have for your convenience, however, enclosed a current rent roll and have included operating statements for the most current month.

"Concerning your comment about the management of West Orange Manor, I would like to point out that prior to the fire experience in May, 1994, we had an occupancy rate of 93 [percent]. Since that fire, one building, or 17 [percent] of the complex, has had plywood on its windows. Coupled with the lack of capital to improve the units, it has been very difficult to attract tenants to West Orange Manor. Our direction from BCS [Acquisition] was to minimize all expenses when operating the property, and the new note-holders wanted the property with as many vacancies as possible.

"I am sure that this property, like so many other properties we have managed over the years, could have become a real success story had a minimal amount of capital been available for obvious repairs and the building, which sustained in the fire loss, had been repaired with the insurance proceeds.

"I look forward to working with you in the future."

no question in my mind that the evidence elicited here today indicated that Mr. Mott did contact other people. As I stated previously, I see nothing wrong with that. The court, for whom the receiver is performing, is not the real party in interest, except that the court wishes that justice be done. Now, I find that it's well within his rights as a receiver to notify anyone who might have an interest in the property . . . to keep them apprised of what's going on and, indeed, to permit them to have such information as would perhaps lead them to a resolution of the problem, [to determine] what they should do relative to this foreclosure action, even to the extent of abandoning it if they see fit. But, at the same time, the receiver, while he communicates, while he may receive information from external sources—his duty remains constant. He is to do what he is charged with doing by direction of the court that appointed him. All that having been said, I find nothing demonstrated here this morning which indicates that the receiver, Mr. Mott, did exceed his duties or was derelict in his duties."

On appeal, Summerbrook claims that the court improperly found that it had not made a prima facie case that Right Property had acted outside the scope of its authority. Summerbrook claims that whether it established a prima facie case is a question of law, citing *Wordie* v. *Staggers*, 27 Conn. App. 463, 465, 606 A.2d 734 (1992).[5] Right Property argues that pursuant to Practice Book § 60-5[6] we review that issue to determine whether the trial court's finding was clearly erroneous.

[5] The issue in *Wordie* v. *Staggers*, supra, 27 Conn. App. 463, was whether the trial court properly dismissed the plaintiff's cause of action, pursuant to Practice Book § 302, now § 15-8, for failing to make out a prima facie case after the plaintiff had produced evidence and rested at trial.

[6] Practice Book § 60-5 provides in relevant part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record, or that the decision is otherwise erroneous in law. . . .

"If the court deems it necessary to the proper disposition of the cause, it may remand the case for a further articulation of the basis of the trial court's factual findings or decision.

"A receiver appointed by judicial authority cannot, in the absence of a statute to the contrary, be subjected to suit without the leave of the court whose officer he is, granted in the cause in which he was appointed. *Porter* v. *Sabin*, 149 U.S. 473 [13 S. Ct. 1008, 37 L. Ed. 815 (1893)]. He is presumed to be acting according to the will of that court." *Links* v. *Connecticut River Banking Co.*, 66 Conn. 277, 284, 33 A. 1003 (1895); see also *Walsh* v. *Raymond*, 58 Conn. 251, 20 A. 464 (1889). "[T]he question whether a court will permit its receiver to be sued is largely a matter of discretion. There is no reason why the Superior Court, being in possession of the property and able to administer full relief to the petitioner, should allow him to bring another action in the same court . . . ." *Davis* v. *Holden*, 92 Conn. 96, 98, 101 A. 485 (1917).

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book § [60-5]. This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court." *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

"We do not examine the record to determine whether the trier of fact could have reached a conclusion other

"It is the responsibility of the appellant to provide an adequate record for review as provided in Section 61-10."

than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." Id., 222.

In ruling from the bench, the court stated that it found nothing to support Summerbrook's claim that Right Property exceeded the scope of its authority as receiver. Summerbrook clearly believes it presented evidence to the contrary. Summerbrook failed, however, to file a motion seeking an articulation of the court's reasoning pursuant to Practice Book § 66-5.[7]

We must first address the threshold question of whether this appeal is reviewable. The record on appeal does not contain a written memorandum of decision. See Practice Book § 64-1 (a). Summerbrook did, however, submit a signed copy of the transcript of the entire March 28, 1998 hearing. "The duty to provide this court with a record adequate for review rests with the appellant. Practice Book § 61-10 . . . *Auric Answering Service, Inc.* v. *Glenayre Electronics, Inc.*, 54 Conn. App. 86, 87, 733 A.2d 307, cert. denied, 250 Conn. 926, 738 A.2d 653 (1999). This court has repeatedly emphasized the importance of compliance with Practice Book § 64-1 and has frequently declined to review claims when the appellant fails to provide the court with an adequate record for review. *State* v. *Beliveau*, 52 Conn. App. 475, 480–81, 727 A.2d 737, cert. denied, 249 Conn. 920, 733 A.2d 235 (1999); *Chase Manhattan Bank/City Trust* v. *AECO Elevator Co.*, 48 Conn. App. 605, 608–609, 710 A.2d 190 (1998); *Emigrant Savings Bank* v. *Erickson*, 46 Conn. App. 51, 53–54, 696 A.2d 1057, cert. denied, 243 Conn. 921, 701 A.2d 341 (1997); *State* v. *Rios*, 30 Conn. App. 712, 714–15, 622 A.2d 618 (1993)." *Mikolin-*

[7] As pointed out by Right Property in its brief, Summerbrook also failed to reproduce testimony in its brief or appendix in contravention of Practice Book § 67-1.

*ski* v. *Commissioner of Motor Vehicles*, 55 Conn. App. 691, 694–95, 740 A.2d 885 (1999).

"The requirements of Practice Book § 64-1 are not met by simply filing with the appellate clerk a transcript of the entire trial court proceedings. *Tolchinsky* v. *East Lyme*, 43 Conn. App. 456, 457, 683 A.2d 747 (1996); see *State* v. *Yopp*, 35 Conn. App. 740, 749–50, 646 A.2d 298 (1994) (declining review when neither written memorandum of decision nor transcript signed by trial court was included in record). A transcript is not even required to be filed in all appeals. See Practice Book § 63-4 (a) (3) . . . . Moreover, a transcript of colloquies between the trial court and counsel is of limited, if any, assistance to the reviewing court. Thus, we have held that the signature of the trial court on an entire trial transcript does not satisfy Practice Book § 64-1. *Auric Answering Service, Inc.* v. *Glenayre Electronics, Inc.*, supra, 54 Conn. App. 88. Perhaps of greater significance is the fact that the Appellate Court is not even required to consult a transcript, although it may do so in a proper case. Practice Book § 67-1 . . . . Thus, it is more than possible that significant matters that are only in the transcript and not in the briefs or appendices may not come to the attention of the reviewing court. This is because they are not in the 'record on appeal.' "[8] *Mikolinski* v. *Commissioner of Motor Vehicles*, supra, 55 Conn. App. 695–96.

Here, Summerbrook submitted a signed copy of the entire transcript. The transcript, however, is not an adequate record in that it does not identify the facts and legal basis on which the court relied in reaching its conclusion. It was, therefore, incumbent on Summerbrook to move for an articulation of the court's ruling pursuant to Practice Book § 66-5. Thus, "[w]e

---

[8] See *Mikolinski* v. *Commissioner of Motor Vehicles*, supra, 55 Conn. App. 696–97, for a discussion of what constitutes a record for appeal.

. . . are left to surmise or speculate as to the existence of a factual predicate for the trial court's [ruling]. Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely speculative." (Internal quotation marks omitted.) *State* v. *Collic*, 55 Conn. App. 196, 209, 738 A.2d 1133 (1999).

In this case, the court conducted a hearing in an effort to exercise its discretion as to whether to permit Summerbrook to bring an action against the receiver. The court simply denied Summerbrook's motion without making any findings of fact on the record. Without an articulation, we do not have a record adequate to review the court's factual findings, which formed the basis for the exercise of its discretion. Therefore, we decline to review the claim.

The judgment is affirmed.

In this opinion the other judges concurred.