STATE OF CONNECTICUT *v.* ANDRE BOISVERT
(14338)

Dupont, C. J., and Foti and Spallone, Js.

Argued November 1, 1995—decision released February 27, 1996

*Robert J. McKay*, with whom, on the brief, was *Gregory A. Thompson*, for the appellant (defendant).

*Jack W. Fischer*, assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *John Davenport*, assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered by the court, following his plea of nolo contendere,[1] to the offense of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a).[2] The dispositive issue in this appeal is whether a roadside sobriety checkpoint, established for the purpose of detecting

[1] The plea was entered conditional on the right to take an appeal pursuant to General Statutes § 54-94a and Practice Book § 4003.

[2] General Statutes § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

violations of § 14-227a (a), violates the provisions of article first, §§ 7 and 9,[3] of the Connecticut constitution.

The trial court found the following facts. On September 10, 1993, at approximately 11 p.m., the defendant was operating a motor vehicle on Wolcott Road, which is Route 69, in the town of Wolcott. At that time, five Wolcott police officers, together with five or six members of the state police, were conducting a sobriety checkpoint near the intersection of Wolcott and Nichols Roads. The defendant stopped his automobile at the checkpoint, and a Wolcott patrol officer engaged the defendant in a brief conversation, inquiring where the defendant was coming from and whether he knew the time. The defendant did not know the correct time, emitted an odor of alcohol on his breath, and slurred his speech. The officer instructed the defendant to pull his vehicle into an adjacent parking lot and turn off his vehicle's engine. Thereafter, the defendant failed certain field sobriety tests. The officer also determined that the defendant's driver's license was under suspension. Upon completion of the field tests, the police officers arrested the defendant and transported him to police headquarters where they administered breathalyzer tests. The defendant was charged with operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) and operating a motor vehicle while his license was under suspension in violation of General Statutes § 14-215 (c).[4]

---

[3] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

[4] Although the police charged the defendant with operating a motor vehicle while his driver's license was under suspension in violation of General Statutes § 14-215 (c) there is no disposition in the trial court record regarding

On November 5, 1995, prior to the commencement of trial, the defendant filed a motion to dismiss the charges against him, alleging that "there is neither statutory or state constitutional authority, absent probable cause, to stop a driver on the Connecticut roadways." The trial court denied the defendant's motion and filed a written memorandum of decision that addressed the defendant's claim "that the initial stop of his vehicle during the sobriety checkpoint constituted an unreasonable and unlawful seizure in violation of the fourth and fourteenth amendments to the United States constitution and article first, § 7, of the Connecticut constitution."[5]

The trial court, in a well reasoned memorandum of decision, rejected the defendant's claim that sobriety checkpoints violate article first, § 7, of our state constitution. The court analyzed the constitutionality of sobriety checkpoints by employing a test that balanced the competing interests of the state against the individual's liberty, as had been done by our Supreme Court in *State* v. *Januszewski*, 182 Conn. 142, 148, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). The defendant conceded during oral argument, and we agree, that this balancing test, as adopted by the trial court, is the proper test to use in this case. The defendant argues, however, that the test

this charge. The defendant has not raised any issues concerning this charge on appeal.

[5] The defendant did not claim a violation of article first, § 9, of the constitution of Connecticut in his motion to dismiss. The defendant filed no motions to dismiss, amend or rectify his motion to dismiss. Therefore, the scope of § 9 is not currently before us, as the trial court did not address it and it is raised for the first time on appeal. If this court was to consider the defendant's claims pursuant to article first, § 9, one of our state constitutional provisions that guarantees due process of law, we would be guided by our Supreme Court's holding that a brief investigatory detention, even without probable cause, passes state constitutional muster. *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990).

was not properly employed.[6] He argues that the stop of an automobile for the purpose of a sobriety check, even if conducted pursuant to neutral criteria and even if involving only a brief and unobtrusive stop, is not permissible under article first, § 7. The defendant contends that stopping a motor vehicle at a sobriety checkpoint is unreasonable without a suspicion of wrongdoing because an individual's right to privacy must outweigh the state's interest in safety. We do not agree.

There is no question that the initial detention of the defendant at the sobriety checkpoint was for general investigatory purposes and did not constitute an actual arrest of his person or a complete seizure of his person or automobile. Nonetheless, a sufficient restraint on the defendant's liberty is evident and implicates his right under article first, § 7, to be secure in his person against "unreasonable searches and seizures."[7] The question, therefore, is simply whether the stop was

[6] The defendant also briefed a claim that "the seizure of the defendant was unreasonable and unsupported by reasonable and articulable suspicion" and that a "totality of circumstances" test should have been employed requiring an objective basis for stopping the defendant. At oral argument, however, the defendant abandoned his argument based on the doctrine of *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (momentary detention of individual by police for investigative purposes justified if officer able to point to specific, articulable facts taken together with rational inferences from them, reasonably warrant intrusion, even if no probable cause for stop), but argues that a condition precedent to a lawful stop under our state constitution, requires a particular suspicion of wrongdoing as opposed to stops of all motorists driving within a particular locale.

[7] Although the trial court found, and the state conceded, that the stopping of a motor vehicle at a sobriety checkpoint constitutes a "seizure" under our state constitution, we do not necessarily view this intrusion and restraint as such; see *State* v. *Williams*, 227 Conn. 101, 115, 629 A.2d 402 (1993); nor do we deem such a finding necessary for the proper disposition of this appeal. We recognize that pursuant to the fourth amendment to the United States constitution a "seizure" occurs when an automobile is stopped and its occupants detained even if the stop is limited and the detention brief. *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307, 312, 98 S. Ct. 1816, 56 L. Ed. 2d 305 (1978).

reasonable. "[T]here can be no ready test for determining reasonableness other than by balancing the need to search against the invasion which the search entails." *Camara* v. *Municipal Court*, 387 U.S. 523, 536–37, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1967). We judge the permissibility of a particular law enforcement practice by balancing its intrusion on the individual's interests against its promotion of legitimate state governmental interests, and examine the intrusion to determine whether it is the minimum search necessary under the circumstances. *State* v. *Lamme*, 19 Conn. App. 594, 599, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990).

"The state has a vital interest in keeping intoxicated drivers off the roads and highways. . . . Balanced against that strong state interest is the intrusiveness of roadside sobriety testing, by which police measure the physical performance of a suspected intoxicated driver before allowing that person to continue driving." Id. While the results of a sobriety test are admissible if the test does not involve long delay or unreasonable intrusion and is administered on the basis of a reasonable and articulable suspicion; id.; the defendant goes one step further and argues that the initial stop itself must be based on "reasonable or articulable suspicion," otherwise, the defendant maintains, the stop does not pass state constitutional standards under article first, § 7.

Article first, § 7, of the Connecticut constitution may provide more substantive protection to citizens than does the fourth amendment of the United States constitution. *State* v. *Miller*, 227 Conn. 363, 379, 630 A.2d 1315 (1993); *State* v. *Kimbro*, 197 Conn. 219, 233, 496 A.2d 498 (1985). "Just as the commands of the fourth amendment are not absolute, neither are those of article first, § 7, of the state constitution." *State* v. *Geisler*, 222 Conn. 672, 691, 610 A.2d 1225 (1992). In this case, we must

decide whether greater protection is afforded by article first, § 7, of the Connecticut constitution than by federal law, specifically in forbidding the use of sobriety checkpoints. We conclude that sobriety checkpoints are a valid exercise of police power under our state constitution, that no requirement of a "reasonable or articulable suspicion" must exist for the initial stop, and that the balancing test, which is not challenged herein, is the proper test to be utilized. That test determines whether the strength of the public interest in combating the threat to public safety of operators of motor vehicles whose ability to operate may be impaired due to the consumption of intoxicating liquor, and the effectiveness of roadside checkpoints outweigh the minimal intrusion on a motorist's privacy. Our inquiry, however, does not end here. We must determine whether the trial court properly utilized the balancing test to conclude as it did.

While we may not disturb facts found by the trial court unless the finding is clearly erroneous; *State* v. *Torres*, 197 Conn. 620, 625, 500 A.2d 1299 (1985); because the issue involves a claimed constitutional right, we examine the record thoroughly to determine whether the subordinate facts justify the trial court's conclusion that the initial stop of the defendant was constitutionally valid. *State* v. *Howard*, 221 Conn. 447, 454, 604 A.2d 1294 (1992).

A citizen's reasonable right to privacy may not be subject to random or arbitrary intrusions merely at the whim of law enforcement. Minimal intrusion in the interest of public safety may be allowed in the form of checkpoint stops when the stop is conducted pursuant to a practice embodying neutral criteria. The trial court recognized these concerns in applying the balancing test to the facts of this case and determined that on September 10, 1993, the Wolcott police, assisted by the state police, conducted the spot check and kept

interference with individual liberty to a minimum. Moreover, the trial court found that the majority of drivers were stopped for only one or two minutes, were required to answer a few questions and produce the expected papers, and that there was no evidence of abusive or threatening conduct by the police against individuals stopped. No persons were singled out arbitrarily for investigation, and the officers in the field had no discretion whatsoever as to whom to stop. All drivers were stopped except during one brief period when a supervisor, in order to alleviate a traffic backup, ordered that a number of cars should be allowed to pass.

The procedure in conducting this spot check was in accordance with state police guidelines promulgated by the commissioner of public safety in § 16.1.6, entitled "Spot Checks," of the department of public safety's Administration and Organizational Manual. Among other things, these procedures require that the establishment and method of operation be approved in advance by certain ranking officers, that the location, date and time be carefully chosen after considering many factors, including the safety of the public and those conducting the operation and the potential inconvenience to the public. The guidelines also specify that notice of a spot check be given to the news media at least three days in advance, giving the name of the town and approximate time. Upon stopping a vehicle, the law enforcement officer must reassure the driver that the spot check is a routine traffic operation. The guidelines also delineate criteria for the selection of the area and the procedure to conduct the initial stop consistent with safety and uniformity. The trial court found that "although a press release was issued in August of 1993, it did not specify the date or approximate time of the spot check planned for September, and no evidence was introduced to prove that publication did, in fact,

occur prior to September 10, 1993."[8] The court, however, found that the Wolcott and state police officers conducted the September 10, 1993 checkpoint in substantial compliance with the guidelines.

The trial court weighed the gravity of the public concern served by protecting the public from drunken drivers, the effectiveness and adequacy of the sobriety checkpoint and the severity of the interference with the individual's liberty. In performing the state constitutional law analysis, the trial court properly considered federal precedent, decisions of other states, and other trial court decisions in Connecticut. The court noted that "[n]umerous United States and Connecticut Supreme Court opinions have emphasized the magnitude of the drunk driving problem and a state's interest in eradicating it. The enormity of this problem and the tragic consequences it has for society cannot be seriously disputed." See also *State* v. *Hickam*, 235 Conn. 614, 668 A.2d 1321 (1995).

We agree that the initial stop of the defendant's motor vehicle at the sobriety checkpoint, without reasonable and articulable suspicion, was not precluded by article first, § 7. All of the significant aspects of the guidelines, from site selection to the police procedures and conduct employed during the stops, were followed with safety being the paramount consideration. The trial court's conclusion in utilizing the balancing test that "[t]he need to prevent loss of lives, personal injury and property damage clearly outweighs the modest intrusion on the individual driver's rights to privacy which occurred that evening in Wolcott when they were briefly stopped at the checkpoint," is justified by the subordinate facts found.

The defendant contends, in the alternative, that even if the roadblock or sobriety checkpoint is constitution-

---

[8] The court determined that, while advance publication is usually preferred, it is not considered constitutionally necessary.

ally valid, the trial court improperly determined that law enforcement personnel followed the guidelines and procedures. As previously discussed, the trial court specifically found that police officers conducted the September 10, 1993 sobriety checkpoint in Wolcott in accordance with the state police guidelines. The defendant, who had no objection to the guidelines' being accepted into evidence, did not demonstrate how or why the court's findings are clearly erroneous. The record shows that the court's conclusions are justified by the subordinate facts found as to the operation of the checkpoint in accordance with the guidelines.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The trial court found that the Wolcott police were briefed on the manner of conducting a sobriety checkpoint in accordance with the state police guidelines and that the checkpoint in question was conducted according to neutral criteria. In addition, the trial court determined that of the 675 drivers previously stopped at four separate checkpoints at the same location, police arrested fourteen drivers, 2 percent, for violating § 14-227a (a).