In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2385

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

TY BROCK,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:09-cr-226—**Philip P. Simon**, *Chief Judge*.

ARGUED NOVEMBER 30, 2010—DECIDED JANUARY 26, 2011

Before KANNE, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. Ty Brock was stopped at a vehicle sobriety checkpoint in Lake Station, Indiana in the early morning hours of November 8, 2009. He did not pass with flying colors. Officers that approached Brock's vehicle smelled a strong odor of marijuana when he rolled down his window and saw Brock trying to hide a ceramic plate with a powdery substance, a razor, and a straw on it under the driver's seat. Brock was

ordered out of the car and arrested, at which point a loaded gun was discovered strapped to his ankle. A search of his car yielded heroin, marijuana, and a second firearm. Brock moved to suppress the items, arguing that the stop of his car at the checkpoint violated his Fourth Amendment rights. After the district court denied the motion, Brock pleaded guilty to possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1), and carrying a firearm in furtherance of a federal drug trafficking crime, 18 U.S.C. § 924(c). He was sentenced to sixty months' imprisonment and three years' supervised release.

Brock appeals the district court's denial of his motion to suppress the items found in his car during the checkpoint stop. He argues that the sobriety checkpoint in this case was unreasonably intrusive. We disagree. Because the checkpoint was neither objectively nor subjectively intrusive in any way that would outweigh the government's interest in operating it, the checkpoint stop did not violate Brock's Fourth Amendment rights. We affirm.

## I. BACKGROUND

During the weekend of November 7, 2009, law enforcement officers from the Lake County Drunk Driving Task Force set up a sobriety checkpoint at 2701 Ripley Street in Lake Station, Indiana. The task force typically set up a roadblock somewhere in Lake County one weekend per month. Approaching motorists were given advance warning of the checkpoint and had the opportunity to

turn and avoid it beforehand, which strikes us as perhaps not the best way to catch drunk drivers.[1] Officers at the checkpoint were given specific instructions from the task force director regarding how to operate the road-block. Cars were stopped in a pattern whereby eight cars would be stopped, the next eight would be let through, and so on. No racial, gender, or age profiling was permitted. When a motorist was stopped at the checkpoint, an officer would make initial contact with the driver by asking for a license, registration, and proof of insurance, and would observe whether the driver seemed impaired. If the officer determined further investigation was needed, the car would be directed to pull over into a separate area. For motorists that were not impaired and had the documents the officer requested, the process would take somewhere between one and five minutes. Over the two nights that the checkpoint was operating

---

[1] The district court referred to evidence at the suppression hearing that avoidability is a "requirement of Indiana state law," but we are not sure that Indiana law is so clear on this issue. *See, e.g.*, *State v. Gerschoffer*, 763 N.E.2d 960, 969 (Ind. 2002) ("The more avoidable a roadblock is, the less it interferes with the liberty of individual drivers. A roadblock need hardly be altogether voluntary, however, or it would have little enforcement or deterrent value."); *King v. State*, 877 N.E.2d 518, 523-24 (Ind. Ct. App. 2007) (degree of avoidability is simply one of a number of factors in assessing reasonableness of a roadblock under Indiana Constitution); *Snyder v. State*, 538 N.E.2d 961, 964 (Ind. Ct. App. 1989) ("if a driver may not choose to avoid the roadblock by turning around, the roadblock *may* become too intrusive.") (emphasis added).

(along with another checkpoint the task force had set up in East Chicago, Indiana) fifty arrests were made, nineteen of which resulted in charges related to drunk driving.[2]

Brock approached the Lake Station roadblock at approximately 1:00 a.m. on November 8, driving a blue 1994 Mercury. According to checkpoint procedure, officer Phillip Lewis of the Cedar Lake Police Department approached the driver's side of the car, while officer David Oszust of the St. John Police Department approached the passenger's side. Officer Lewis noticed a strong odor of marijuana when Brock rolled down his window, and observed that Brock was shaking and appeared nervous as he responded to a request for his license and registration. At the same time, Officer Oszust shined his flashlight into the car from the passenger's side and saw Brock using his foot to try and hide a ceramic plate with piles of white and off-white powdery substances, a razor blade, and a straw on it under the driver's seat. Officer Oszust told Officer Lewis what he saw, and Brock was ordered to place his hands on his head and exit the vehicle. As Brock got out of the car, he removed his hands from his head and appeared to reach for his lower leg area. He was subdued, handcuffed, and arrested, and officers discovered that he had a loaded .32-caliber handgun in an ankle holster. A search of his car incident to the arrest yielded heroin,

---

[2] The record does not indicate how many of the arrests occurred at the Lake County checkpoint versus how many came from the East Chicago location.

marijuana, a second loaded weapon, and other drug paraphernalia.

Brock was charged with one count each of possession with intent to distribute heroin and marijuana, 21 U.S.C. § 841(a)(1), and with carrying a firearm in furtherance of a federal drug trafficking crime, 18 U.S.C. § 924(c). He moved to suppress the guns and drugs, arguing that the checkpoint was unconstitutional. The district court held an evidentiary hearing at which Officers Lewis and Oszust both testified, and the court denied Brock's motion in a written order. Brock subsequently entered into a plea agreement, pleaded guilty to the heroin and firearm counts, and the government agreed to dismiss the marijuana charge. Brock was sentenced to sixty months' imprisonment and three years' supervised release, six months of which will be served in home detention. Brock appeals the district court's denial of his motion to suppress.

## II. ANALYSIS

Brock argues that the initial stop of his vehicle at the sobriety checkpoint violated his Fourth Amendment right to be free from unreasonable search and seizure. He concedes that the government has a legitimate interest in preventing drunk driving, but argues that this particular checkpoint was unreasonably intrusive on his Fourth

Amendment rights.[3] When reviewing a district court's ruling on a motion to suppress, we review legal conclusions de novo, and factual findings and credibility determinations for clear error. *United States v. Pineda-Buenaventura*, 622 F.3d 761, 774 (7th Cir. 2010).

A stop of a vehicle at a sobriety checkpoint constitutes a seizure within the meaning of the Fourth Amendment, and its validity depends on whether the seizure was reasonable. *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979). To determine whether a checkpoint stop is reasonable, we apply a balancing test set forth by the United States Supreme Court in *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 449-50 (1990), in which we weigh the intrusion on an individual's Fourth Amendment rights implicated in the initial stop against the government's interest in preventing drunk driving. In performing this balancing test, we assess two types of intrusiveness—the "objective" intrusion, meaning the duration of the stop and the intensity of any questioning and visual inspection, and the "subjective" intrusion, meaning the stop's potential for generating fear and surprise to law-abiding motorists. *Id.* at 451-52; *see also United States v. Trevino*, 60 F.3d 333, 336 (7th Cir. 1995).

---

[3] Brock does not challenge the validity of his arrest, and instead only challenges the constitutionality of the initial stop. Clearly, the officers had reasonable suspicion to further investigate Brock once they detected the marijuana odor and observed him trying to hide what appeared to be narcotics under the car seat.

"No one can seriously dispute the magnitude of the drunken driving problem or the States' interest in eradicating it." *Sitz*, 496 U.S. at 451. Brock recognizes this and does not challenge the state of Indiana's legitimate interest in preventing drunk driving. Instead, he argues that the checkpoint was unreasonably intrusive in a way that outweighs that interest. We disagree. The evidence before the district court demonstrated that the roadblock was neither objectively nor subjectively intrusive.

Our decision in *Trevino* is instructive. There, the defendant challenged the validity of a roadblock in Peoria, Illinois where officers were checking for automobile equipment violations, and in the course of doing so discovered a large amount of drugs, money, and a weapon in the defendant's car. *Trevino*, 60 F.3d at 335-36. Police at the Peoria checkpoint stopped every vehicle that passed through it, the checkpoint was administered pursuant to set guidelines, and motorists were made aware of the fact that they were approaching an official roadblock. *Id.* at 338. The average wait for a motorist was between three and five minutes, depending on whether traffic backed up. *Id.* at 335. We applied the *Sitz* test to the checkpoint and found it to be valid, noting that what was dispositive in *Sitz* was that police were stopping motorists "pursuant to neutral guidelines" and were therefore "not at liberty to randomly decide which motorists would be stopped and which would not." *Id.* at 337. That way, a motorist would know that the stop was official, and "would have no reason to believe that he or she was a target of unbridled police discretion." *Id.*

The same conclusion is called for here. Objectively, the stoppage time for cars at the Lake Station checkpoint was brief—1-5 minutes on average versus 3-5 minutes in *Trevino*. And the initial questioning of motorists was very limited—simply basic requests for license, registration, and insurance. The objective intrusion to motorists stopped at the roadblock was minimal. *See Sitz*, 496 U.S. at 452. Nor was the stop subjectively intrusive. As we noted in *Trevino*, the most critical factors in assessing subjective intrusion are first, whether the checkpoint is set up in a manner which informs incoming drivers that it is an official stop, and second, whether it gives the officers unbridled discretion to randomly target individual motorists. *Trevino*, 60 F.3d at 337. Here, the evidence before the district court was that approaching motorists were warned about the checkpoint and could turn left or right to avoid it if they wished. *Cf. id.* at 336 (rejecting defendant's argument that the checkpoint was subjectively intrusive due to a lack of advance warning). The fact that drivers had the option to avoid the checkpoint altogether weighs heavily against a finding that the roadblock was subjectively intrusive. Nor did officers have "unbridled discretion" to determine which motorists would be stopped. *See id.* at 337. Police operating the roadblock were under instructions to stop eight cars, then to let the next eight through, and so on in an alternating pattern. While this is different from the checkpoints in *Sitz* or *Trevino* where *every* car was stopped, the difference is not meaningful from the standpoint of officer discretion. In both circumstances, officers were "not free to decide which motorists would be

stopped and which would not." *Trevino*, 60 F.3d at 338. Police operating the Lake Station checkpoint were instructed to stop cars in a specific alternating pattern, and there is no evidence in the record (nor does Brock argue) that they deviated from those instructions in any way. The Lake Station checkpoint was not subjectively intrusive in any way that would outweigh the legitimate government interest at issue.

Brock argues that the government failed to put forth sufficient evidence demonstrating that the checkpoint was valid. He is correct that it is the government's burden to demonstrate that the stop was reasonable, *see, e.g.*, *United States v. Pavelski*, 789 F.2d 485, 490 (7th Cir. 1986), but we disagree that it did not meet that burden. The district court heard testimony from the two officers that initially approached Brock's vehicle, Officers Lewis and Oszust, and they testified as to the setup of this particular roadblock and the specific and neutral guidelines they followed in operating it. The district court found these officers to be credible. While written guidelines governing the operation of a checkpoint would be preferable, there was sufficient evidence in this case supporting the conclusion that the Lake County checkpoint was not intrusive in a manner that would violate the Fourth Amendment.

### III. CONCLUSION

The initial stop of Brock's vehicle at the Lake Station checkpoint was reasonable. It was justified by a strong government interest in preventing drunk driving, and was

not objectively or subjectively intrusive in any way that would outweigh that interest. The judgment of the district court is AFFIRMED.