No. 14-0372  -  *Patricia S. Reed, Commissioner of the West Virginia Division of Motor Vehicles v. James Pettit*

**FILED**

**May 13, 2015**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

Davis, Justice, dissenting:

In this proceeding, DMV asked this Court to reinstate its order revoking Mr. Pettit's driver's license.  The majority opinion found that Mr. Pettit's driver's license was properly revoked and reinstated DMV's revocation order.  For the reasons set out below, I respectfully dissent.

### *Mr. Pettit Was Unlawfully Stopped at an Illegally Held Sobriety Checkpoint*

This was a simple case.  However, the majority has used this case to completely destroy our well-settled principles of law regarding sobriety checkpoint roadblocks.  Prior to the majority opinion in this case, our law was quite clear about what was legally required to set up a sobriety checkpoint roadblock.  In Syllabus point 1 of *Carte v. Cline*, 194 W. Va. 233, 460 S.E.2d 48 (1995), we succinctly addressed the matter as follows:

> Sobriety checkpoint roadblocks are constitutional when *conducted within predetermined operational guidelines* which minimize the intrusion on the individual and mitigate the discretion vested in police officers at the scene.

(Emphasis added.)

The decision in *Carte* requires sobriety checkpoint roadblocks be "conducted

1

within predetermined operational guidelines." *See Dale v. Arthur*, No. 13-0374, 2014 WL 1272550, at \*4 (W. Va. Mar. 28, 2014) (unpublished mem. dec.) ("the sole basis for the stop of respondent's vehicle was the sobriety checkpoint, and the DMV introduced no evidence whatsoever to establish that the checkpoint was conducted within predetermined operational guidelines"[.] (internal quotations and citation omitted). This fundamental requirement was extended by the Court to checkpoint roadblocks in general by Syllabus point 9 of *State v. Sigler*, 224 W. Va. 608, 687 S.E.2d 391 (2009), which held as follows:

> Suspicionless checkpoint roadblocks are constitutional in West Virginia only when *conducted in a random and non-discriminatory manner within predetermined written operation guidelines* which minimize the State's intrusion into the freedom of the individual and which strictly limits the discretion vested in police officers at the scene.

(Emphasis added.)

Both *Carte* and *Sigler* demand that law enforcement officials put into place guidelines for conducting checkpoint roadblocks. More importantly, both decisions require law enforcement officials comply with those guidelines in order for a stop and arrest to be constitutionally legal. *See Commonwealth v. Garibay*, 106 A.3d 136, 140 (Pa. Super. Ct. 2014) ("[W]here police do not comply with the guidelines in establishing a checkpoint, the trial court should suppress evidence derived from the stop, including the results of field sobriety and blood alcohol testing."). *See also State v. Smith*, No. 1209000032, 2014 WL 1047076 (Del. Super. Ct. Feb. 28, 2014) (suppressing DUI evidence after finding police

2

failed to comply with DUI sobriety checkpoint guidelines); *State v. White*, 753 S.E.2d 698 (N.C. Ct. App. 2014) (affirming suppression of DUI evidence obtained at a sobriety checkpoint that did not comply with statutory requirements); *State v. Hirsch*, No. 13CA0025-, 2014 WL 6865698 (Ohio Ct. App. Dec. 8, 2014) (affirming suppression of DUI evidence because police failed to comply with guidelines for establishing and conducting roadside sobriety checkpoints).

There is no dispute that the sobriety checkpoint roadblock guidelines in the instant case required the police to obtain the approval of the prosecutor before conducting a sobriety checkpoint roadblock. *See Brouhard v. Lee*, 125 F.3d 656, 658 (8th Cir. 1997) ("Under the guidelines, the Sheriff's Department was to consult with the prosecuting attorney and local municipal judges before implementing the sobriety checkpoint program."). The police ignored this guideline and failed to obtain the approval of the prosecutor. The guidelines required the police use six officers to conduct the checkpoint roadblock. The police ignored this requirement and used only four police officers to conduct the checkpoint roadblock. The guidelines required the police to notify the public in advance as to the location of the checkpoint roadblock. The police initially informed the public of the location of the checkpoint roadblock, but then decided to change its location without informing the public. In other words, the police utterly failed to follow the guidelines by informing the public of the actual location of the checkpoint roadblock.

The failure of the police to comply with their own sobriety checkpoint guidelines was a matter that we addressed in *Carte*. Specifically, Syllabus point 2 of *Carte* states:

> A person who wishes to *challenge official compliance with and adherence to sobriety checkpoint operational guidelines* shall give written notice of that intent to the commissioner of motor vehicles prior to the administrative revocation hearing which is conducted pursuant to W. Va. Code § 17C-5A-2.

194 W. Va. 233, 460 S.E.2d 48 (Emphasis added).

The decision in *Carte* gave drivers the right to contest the revocation of their driver's license if a sobriety checkpoint roadblock was held in violation of police guidelines. The majority opinion has rendered meaningless this right. Under the majority opinion, even when a driver proves beyond doubt that the police failed to follow sobriety checkpoint roadblock guidelines, he or she will not obtain any relief. In essence, under the majority opinion, the police no longer need to have any checkpoint roadblock guidelines because the majority opinion has given law enforcement officials the authority to arbitrarily disregard those guidelines.

A basic tenet of our jurisprudence is that of providing a remedy for a wrong. Rather than providing Mr. Pettit with a remedy for wrongful conduct by the police in stopping him at an illegal sobriety roadblock, the majority has rewarded the police by

4

authorizing them to arbitrarily disregard any and all provisions of sobriety checkpoint roadblock guidelines. The majority's decision is inconsistent with the basis for the United States Supreme Court's decision to uphold the constitutionality of sobriety checkpoints in general. In the seminal case, *Michigan Department of State Police v. Sitz*, 496 U.S. 444, 110 S. Ct. 2481, 110 L. Ed. 2d 412 (1990), the Supreme Court found sobriety checkpoints to be valid when there are "guidelines setting forth procedures governing checkpoint operations, site selection, and publicity." *Sitz*, 496 U.S. at 447, 110 S. Ct. at 2484 110 L. Ed. 2d 412. *See United States v. Brock*, 632 F.3d 999, 1002-03 (7th Cir. 2011) ("[W]hat was dispositive in *Sitz* was that police were stopping motorists 'pursuant to neutral guidelines'"); *United States v. Johnson*, 170 F.3d 708, 718 (7th Cir. 1999) ("*Sitz* . . . focused on the facts that the checkpoints were selected pursuant to established guidelines, reducing the officers' discretion, and that the checkpoints did not take motorists by surprise[.]" (citation omitted)); *United States v. Huguenin*, 154 F.3d 547, 561-62 (6th Cir. 1998) ("[T]he Supreme Court, in upholding the checkpoints in *Sitz*, emphasized that individual discretion was kept to a minimum because the checkpoint was operated under written guidelines setting forth the procedures that would govern the operation of the checkpoint, site selection, and publicity."); *United States v. Quintana*, No. 93-2127, 13 F.3d 407, 1993 WL 525677, at *2 (10th Cir., Dec. 21, 1993) (unpublished op.) ("In *Sitz*, the Supreme Court upheld the State's use of highway sobriety checkpoints created under guidelines setting forth procedures governing checkpoint operations, site selection, and publicity."). In the final analysis, the majority

5

opinion has overruled *Carte* and ignored the sound teachings of *Sitz*.

For the foregoing reasons, I dissent.